ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| EDUARDO MEDINA SÁNCHEZ<br><br>Parte Recurrida<br><br>V.<br><br><br>LINDA M. CORUJO RAMSEY; FERNANDO ROMÁN CORUJO; SWISS CHALET, INC.; CONSEJO DE TITULARES DEL CONDOMINIO GALLERY PLAZA; CPG/GS ISLAND PROPERTIES III, LLC; EDUARDO NAVARRO PLUGUEZ<br><br>Codemandados<br><br>PREMIER CONCIERGE SERVICES, INC.<br><br>Parte Peticionaria<br><br>LBRG LLC; ASEGURADORAS X, Y y Z<br><br>Terceros Codemandados | TA2026CE00194 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>_____<br>Caso Núm.: SJ2021CV02186<br><br>_____<br>SOBRE:<br><br>ORDEN DE ENTREDICHO PROVISIONAL; INJUNCTION CLÁSICO, DE SERVIDUMBRE Y POSESORIO; ACCIÓN REIVINDICATORIA DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 17 de marzo de 2026

Comparece Premier Concierge Services, Inc. ("Premier" o "Peticionario") y solicita la revocación de la Resolución emitida el 16 de enero de 2026[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro de instancia" o "foro recurrido"). En esa ocasión, el foro de instancia declaró *No Ha Lugar* la *Moción Solicitando Que Se Dicte Sentencia Por Las*

_____
[1] Notificada el 20 de enero de 2026.

*Alegaciones Por Falta De Plausibilidad Y Cosa Juzgada* presentada por Premier.

Por los fundamentos que exponemos a continuación, **revocamos** la Resolución recurrida.

-I-

A continuación, detallamos los hechos pertinentes a la controversia que nos ocupa.

El 8 de abril de 2021, el señor Eduardo Medina Sánchez ("Sr. Medina" o "Recurrido") presentó una *Petición Jurada de Remedios Extraordinarios y Demanda*[2]. En esa ocasión, el Sr. Medina aseguró tener un derecho exclusivo sobre los estacionamientos 458 y 459 del Condominio Gallery Plaza ("Gallery Plaza"). Lo anterior en virtud de una escritura pública otorgada el 29 de octubre de 2009 entre el Recurrido, Swiss Chalet y el acreedor hipotecario Firstbank Puerto Rico. Mediante dicha escritura, Swiss Chalet vendió, cedió y traspasó al Recurrido el apartamento 1506 Sur y los estacionamientos 458 y 459 de Gallery Plaza[3]. Además, expresó que el 30 de julio de 2012, la señora Linda M. Corujo Ramsey ("Sra. Corujo") otorgó una escritura de compraventa a fin de adquirir el apartamento 1606 S de Gallery Plaza[4]. Cabe señalar que, mediante escritura pública, a la Sra. Corujo le fueron asignados los estacionamientos 458 y 459. Según surge de la Demanda, en octubre de 2012, el señor Robert Girald, representante del edificio, le notificó a la Sra. Corujo que los estacionamientos no le correspondían a ella, sino al Sr.

---

[2] Véase Entrada #1 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Véase Entrada #1, Anejo #1 del expediente de Primera Instancia en SUMAC.
[4] Véase Entrada #1, Anejo #3 del expediente de Primera Instancia en SUMAC.

Medina. Alega el Recurrido que, a pesar de ello, la Sra. Corujo y su hijo comenzaron a utilizar los estacionamientos. Sin embargo, luego de varios apercibimientos, tanto la Sra. Corujo como sus inquilinos dejaron de utilizar los estacionamientos en controversia. Como parte de sus alegaciones, el Sr. Medina aduce que para el 24 de julio de 2019, la señora Irene Agosto ("Sra. Agosto"), empleada de Premier envió un correo electrónico titulado "Parking Spaces / Estacionamientos". En dicho correo, la Sra. Agosto incluyó una tabla de los estacionamientos asignados e indicó que setenta y nueve (79) de estos, aparecían en algunas escrituras personales. Según se desprende de la tabla en cuestión, tanto el apartamento 1506 perteneciente al Sr. Medina, como el 1606 perteneciente a la Sra. Corujo, aparecen con los mismos estacionamientos asignados, a saber, el 458 y el 459. Según alega el Recurrido, posterior a dicha comunicación, la Sra. Corujo y el señor Fernando Román Corujo ("Sr. Román") comenzaron a utilizar nuevamente los estacionamientos en controversia. Posteriormente, el Sr. Medina presentó una Querella ante el Departamento de Asuntos del Consumidor de Puerto Rico (DACO), donde incluyó como parte querellada a Premier, entre otros. Así las cosas, el Recurrido señaló que, en la segunda mitad del 2020, la Sra. Corujo y el Sr. Román instalaron barreras en los estacionamientos en controversia para restringir que otras personas pudieran hacer uso de estos. Luego de múltiples trámites, Swiss Chalet le solicitó a la Sra. Corujo que removiese las barreras. Sin embargo, según alega el Sr. Medina, esta hizo caso omiso a dicha solicitud. A raíz de tal situación, el

Recurrido presentó una Demanda en donde incluyó a Premier y solicitó lo siguiente:

- *Injunction* contra los Demandados;
- Que se adjudique la titularidad de los estacionamientos en cuestión al Sr. Medina y declare que su apartamento tiene una servidumbre perpetua e irrevocable para su uso;
- Ordene a los Demandados a compensarle solidariamente la suma de $500,000.00 en daños.

El 16 de noviembre de 2021, Premier presentó su *Contestación a Petición Jurada de Remedios Extraordinarios y Demanda*[5]. Así las cosas, el 12 de enero de 2022, Premier presentó *Moción Solicitando Sentencia por las Alegaciones Desestimando la Demanda con Perjuicio en Cuanto a la Parte Codemandada Premier Concierge Services, Inc.*[6] Mediante dicha moción, el Peticionario alegó que la causa de acción en su contra carece de alegaciones de actos u omisiones de carácter culposo o negligente que sean el nexo causal del daño alegado por el Recurrido. Así, solicitó que se desestimaran con perjuicio las reclamaciones en su contra y que se le imponga al Sr. Medina la cantidad de $10,000.00 en honorarios de abogados por temeridad, más las costas del litigio.

El 29 de noviembre de 2022, el foro de instancia emitió una *Sentencia Parcial*[7] en la que desestimó sin perjuicio las reclamaciones del Sr. Medina contra Premier. En esa ocasión, el foro recurrido determinó que "*los hechos en la Demanda no especifican que Premier tenía un deber de*

---

[5] Véase Entrada #86 del expediente de Primera Instancia en SUMAC.
[6] Véase Entrada #89 del expediente de Primera Instancia en SUMAC.
[7] Véase Entrada #185 del expediente de Primera Instancia en SUMAC.

*actuar y atender la situación de los estacionamientos*"[8].

Además, señaló que la Petición "*no establece hechos suficientes para concluir que, de haber intervenido en la situación, Premier hubiese evitado que Román Corujo y Corujo Ramsey cesaran el uso de los estacionamientos referidos*"[9].

Posteriormente, el 1 de diciembre de 2023, el Sr. Medina presentó la *Primera Demanda Enmendada*[10], donde incluyó, nuevamente, a Premier como demandado. En dicha enmienda, el Recurrido hizo énfasis en que Premier instó a la Sra. Corujo y al Sr. Román a invadir los estacionamientos 458 y 459, al permitirles instalar barreras que impidieron que el Sr. Medina utilizara los estacionamientos. Así las cosas, el 11 de enero de 2024, Premier contestó la Demanda enmendada negando toda responsabilidad[11] y alegando que la controversia de epígrafe es exclusivamente entre el Sr. Medina y los codemandados, Sra. Corujo y Sr. Román. Además, Premier señaló que la *Resolución*[12] del DACO emitida el 19 de marzo de 2021 y en la cual se desestimó la causa de acción contra el aquí Peticionario, constituye cosa juzgada. Posteriormente, el 6 de febrero de 2024, Premier presentó una *Moción Solicitando que se Dicte Sentencia por las Alegaciones por Falta de Plausibilidad y Cosa Juzgada*[13]. En síntesis, el Peticionario señaló que la causa de acción en daños y perjuicios dirigida a Premier carece de alegaciones de actos u omisiones de carácter culposo o negligente por parte del Peticionario que demuestren

---

[8] *Íd.*, pág. 15.
[9] *Íd.*
[10] Véase Entrada #247 del expediente de Primera Instancia en SUMAC.
[11] Véase Entrada #258 del expediente de Primera Instancia en SUMAC.
[12] Véase Entrada #1, Anejo #13 del expediente de Primera Instancia en SUMAC.
[13] Véase Entrada #262 del expediente de Primera Instancia en SUMAC.

el nexo causal entre el daño alegado y el acto u omisión imputada. Además, alegó que el Sr. Medina no cumplió con los criterios de plausibilidad que requiere nuestro ordenamiento jurídico. Finalmente, Premier afirmó que la controversia de epígrafe es un asunto en el que aplica la doctrina de cosa juzgada. Ello, basado en la Resolución emitida por el DACO en donde la Agencia determinó que Premier, junto con otras partes co querelladas, no responde al Sr. Medina por sus alegaciones.

El 7 de marzo de 2024, el Sr. Medina presentó su *Oposición a Moción de Sentencia por las Alegaciones*[14]. El 18 de noviembre de 2024, el foro de instancia emitió una *Orden de Señalamiento*[15] para la celebración Vista Argumentativa y Sobre el Estado de los Procedimientos. La Vista en cuestión fue celebrada el 26 de marzo de 2025[16]. Así, el 20 de enero de 2026, el foro recurrido emitió una *Resolución*[17] declarando *No Ha Lugar* la *Moción Solicitando que se Dicte Sentencia por las Alegaciones por Falta de Plausibilidad y Cosa Juzgada*. Inconforme con dicha determinación, el 18 de febrero de 2026, Premier presentó una *Petición de Certiorari*[18] ante este Tribunal e hizo los siguientes señalamientos de error:

**PRIMERO: ERRÓ EL TPI AL NO DETERMINAR QUE LAS CAUSAS DE ACCIÓN DIRIGIDAS A LA PETICIONARIA PREMIER NO CUMPLEN CON EL CRITERIO DE PLAUSIBILIDAD.**

**SEGUNDO: ERRÓ EL TPI AL NO DETERMINAR QUE LA RESOLUCIÓN DE LA QUERELLA EDUARDO MEDINA SÁNCHEZ VS. JUNTA DE DIRECTORES DEL COND. GALLERY PLAZA, ET AL, C-SAN-2020-0007010, CONSTITUYE COSA JUZGADA CON RESPECTO A LA PETICIONARIA PREMIER.**

---

[14] Véase Entrada #267 del expediente de Primera Instancia en SUMAC.
[15] Véase Entrada #288 del expediente de Primera Instancia en SUMAC.
[16] Véase Entrada #291 del expediente de Primera Instancia en SUMAC.
[17] Véase Entrada #296 del expediente de Primera Instancia en SUMAC.
[18] Véase Entrada #1 del expediente del Tribunal de Apelaciones en SUMAC.

Ese mismo día, Premier presentó una *Moción en Auxilio de Jurisdicción*[19] a fin de que este Tribunal paralizara el trámite procesal del caso de autos, particularmente, el descubrimiento de prueba fijado hasta el 30 de septiembre de 2026. El 18 de febrero de 2026, este Tribunal emitió una *Resolución* declarando *No Ha Lugar* el auxilio de jurisdicción. Según alega el Peticionario, dicho trámite conllevaría una carga procesal injustificada y un desgaste de recursos que resulta contrario a los principios de economía procesal y buena administración de la justicia. Posteriormente, el 25 de febrero de 2026, el Sr. Medina presentó su *Memorando en Oposición a la Expedición del Auto de Certiorari*[20].

-II-

**A. *Certiorari***

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[21]

Mediante la Regla 52.1 de Procedimiento Civil de 2009[22], se hizo un cambio trascendental respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del foro de instancia mediante recurso de *certiorari*. A tales efectos, la Regla 52.1 de Procedimiento Civil, *supra*, dispone, en parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el

---

[19] Véase Entrada #2 del expediente del Tribunal de Apelaciones en SUMAC.
[20] Véase Entrada #5 del expediente del Tribunal de Apelaciones en SUMAC.
[21] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[22] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V, R. 52.1.

Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Por tanto, el asunto planteado en el recurso instado por el promovente debe tener cabida bajo alguno de los incisos de la Regla 52.1, *supra*, pues el mandato de la referida regla establece taxativamente que "*solamente será expedido*" el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, aquellos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[23]

---

[23] La Ley Núm. 177 del 30 de noviembre de 2010 "extendió la facultad de presentar recursos de *certiorari* para revisar también aquellas órdenes o resoluciones interlocutorias dictadas por el foro primario que involucren asuntos de interés público o que presenten situaciones que demanden la atención inmediata del foro revisor,

Así las cosas, el primer examen que debe pasar todo recurso de *certiorari* para ser expedido es que tenga cabida bajo alguno de los incisos de la Regla 52.1 de Procedimiento Civil.

Superada esta primera etapa, procede hacer nuestro examen tradicional caracterizado por la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. A pesar de ser un asunto discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones esboza los siete criterios que el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari*. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[24]

Sólo podremos intervenir con el ejercicio de la discreción en aquellas situaciones en que se demuestre

---

pues aguardar hasta la conclusión del caso conllevaría un 'fracaso irremediable de la justicia'" *IG Builders, et al. v. BBVAPR*, 185 DPR 307 (2012).

[24] 4 LPRA Ap. XXII-B, R. 40.

que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en interpretar o aplicar cualquier norma procesal o de derecho sustantivo.[25] Aun cuando determinar si un tribunal ha abusado de su discreción no es tarea fácil ello ciertamente está relacionado de forma estrecha con el concepto de razonabilidad.[26]

**B. Desestimación conforme la Regla 10.3 de Procedimiento Civil**

La Regla 10.3 de Procedimiento Civil[27] provee para que cualquier parte pueda solicitar al tribunal que se dicte sentencia por las alegaciones, luego de que se haya contestado la demanda y cualquier otra alegación que requiera contestación[28]. Esto, siempre y cuando no se afecte la solución rápida de los procedimientos[29]. En particular, la referida disposición lee como sigue:

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que se dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3. Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36, y todas las partes tendrán oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla.

Al solicitar que se dicte sentencia por las alegaciones, no deben existir controversias sustanciales

---

[25] *Rivera Durán v. Bco. Popular*, 152 DPR 140, 155 (2000).
[26] *Íd.*
[27] 32 LPRA Ap. V, R. 10.3.
[28] *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 102 (2002).
[29] *Íd.*

de hechos, de modo que la celebración del juicio en su fondo para recibir o dilucidar prueba sea innecesaria[30].

Al momento en que una parte solicite que se dicte sentencia por las alegaciones, todos los hechos bien alegados en la demanda se estimarán admitidos[31]. No obstante, tal aceptación es únicamente para propósitos de la moción y no constituyen una renuncia a cualquier controversia que deba dilucidarse a través de prueba en el juicio[32].

El estándar aplicable al momento de resolver una moción para que se dicte sentencia por las alegaciones es idéntico al que se utiliza ante una moción de desestimación fundamentada en que la demanda deja de exponer una reclamación que justifique la concesión de un remedio[33]. Por lo tanto, "*cualquier distinción entre una y otra moción es meramente semántica, pues el tribunal tiene que aplicarle [sic] a ambas el mismo estándar al considerarlas*"[34]. Así pues, las alegaciones de la demanda se evaluarán liberalmente y de la manera más favorable al promovido[35]. La acción se desestimará únicamente si el promovente no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en un juicio[36].

## C. Responsabilidad extracontractual

El Artículo 1536 del nuevo Código Civil dispone que la persona que por culpa o negligencia cause daño a otra, viene obligada a reparar el daño causado[37]. Para que

---

[30] *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871, 883-884 (2023); *Montañez v. Hosp. Metropolitano, supra.*
[31] *Montañez v. Hosp. Metropoliano, supra*, pág. 103.
[32] *Íd.*, pág. 103; *W.M.M., P.F.M. et al. v. Colegio et al., supra*, pág. 884.
[33] *Montañez v. Hosp. Metropolitano, supra*, págs. 103-104.
[34] *Íd.*, pág. 104.
[35] *W.M.M., P.F.M. et al v. Colegio et al., supra*, pág. 906.
[36] *Montañez v. Hosp. Metropolitano, supra*, pág. 105.
[37] 31 LPRA § 10801.

prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante, a saber: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; (3) el daño real causado al reclamante[38].

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los <u>especiales</u>, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los <u>generales</u>, conocidos como daños morales[39].

La culpa o negligencia es la falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias[40].

En Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que *"no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general"*[41]. Nuestro más alto foro ha expresado que la relación causal, elemento imprescindible en una

---

[38] *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1125 (2024); *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023).
[39] *Nieves Díaz v. González Massas*, 178 DPR 820, 845 (2010).
[40] *Sucn, Mena Pamias et al. v. Meléndez et al.*, *supra*, pág. 768; *Montalvo v. Cruz*, 144 DPR 748, 755 (1998).
[41] *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 485 (2022); *Sucn. Mena Pamias et al. v. Meléndez et al.*, *supra*, pág. 768.

reclamación en daños y perjuicios, es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico[42]. Conforme con lo anterior, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente este parece ser la consecuencia razonable y común de la acción u omisión de que se trate[43].

Para establecer la relación causal necesaria, no es suficiente que un hecho aparente ser condición de un evento si este regularmente no trae consigo dicho resultado. Sobre este particular, nuestro más alto foro expresó lo siguiente: *"[e]sta normativa ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso sea imputable moralmente a su alegado autor, porque éste [sic] era una consecuencia previsible o voluntaria del acto negligente"*[44].

-III-

En el presente caso, Premier sostiene que erró el foro de instancia al no determinar que las causas de acción en su contra no cumplen con el criterio de plausibilidad. Además, alegó que, conforme a la determinación emitida por el DACO, la acción en su contra constituye cosa juzgada. Veamos.

El Sr. Medina alega haber sufrido la pérdida de un inquilino en el año 2020 como consecuencia del asunto con los estacionamientos. Además, alega que, debido a

---

[42] *Rivera v. S.L.G. Díaz*, 165 DPR 408, 422 (2005); *Nieves Díaz v. González Massas, supra,* págs. 844-845.
[43] *Hernández Vélez v. Televicentro*, 168 DPR 803, 814 (2006); *Cruz Flores v. Hosp. Ryder et al., supra,* pág. 485.
[44] *Soto Cabral v. E.L.A.*, 138 DPR 298, 317 (1995).

esta situación sufrió daños económicos, como lo fue la reducción del precio de alquiler del apartamento. Ahora bien, según surge de los autos del caso, quienes comenzaron a hacer uso de los estacionamientos 458 y 459, privando así al Sr. Medina de su uso y disfrute, fueron la Sra. Corujo y el Sr. Román. Además, cabe señalar que, el área de estacionamiento es una finca independiente, ajena al Consejo de Titulares de Gallery Plaza y, por ende, de Premier.

Como parte de sus gestiones, Premier envió un correo electrónico indicando los números de apartamento y los estacionamientos que tienen asignado cada uno, según surge de la escritura matriz. El Sr. Medina alega que dicha comunicación dio paso a que la Sra. Corujo y el Sr. Román "invadieran" los estacionamientos en controversia. Sin embargo, no podemos concluir que la acción de Premier de enviar una comunicación con información que surge de una escritura pública represente un acto culposo o negligente. El propio Recurrido ha indicado, en múltiples ocasiones, que los daños sufridos fueron como consecuencia de no tener acceso a los estacionamientos 458 y 459. Por lo tanto, quienes han sido partícipes de los daños alegados por el Sr. Medina son la Sra. Corujo y el Sr. Román, no Premier.

Por su parte, el Sr. Medina también alega que Premier cooperó con la Sra. Corujo y el Sr. Román en la instalación de barreras, prohibiéndole así el acceso a los estacionamientos en controversia. De un análisis de los documentos que obran en el expediente del caso podemos concluir que el Recurrido no logró demostrar, con adecuada especificidad, que la autorización de

Premier a dicha instalación haya excedido la autoridad de este como administrador.

Tal y como explicamos en el acápite II, ante un reclamo de daños y perjuicios, nuestro ordenamiento jurídico requiere que el demandante pruebe el acto u omisión culposa o negligente, así como la relación causal entre el acto u omisión y el daño ocasionado. Finalmente, deberá demostrar que sufrió un daño real, es decir, no hipotético. En el caso ante nos, el Sr. Medina no ha demostrado que los daños alegados hayan sido como consecuencia de una conducta culposa o negligente por parte de Premier.

Por entender que la discusión del primer error dispone de la totalidad del recurso, no entraremos a discutir el segundo error referente a la doctrina de cosa juzgada.

A tenor con lo anterior, procede la desestimación de las causas de acción contra el Peticionario, toda vez que el Recurrente no ha demostrado con hechos suficientes que tenga derecho a un remedio por parte de Premier.

-IV-

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se **revoca** la Resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*